
NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 14-30047 |
| | ) | |
| Plaintiff - Appellee, | ) | D.C. No. 2:13-cr-00010-DLC-1 |
| | ) | |
| v. | ) | MEMORANDUM* |
| | ) | |
| KEVIN SCOTT NESSLAND, | ) | |
| | ) | |
| Defendant - Appellant. | ) | |
| | ) | |

Appeal from the United States District Court
for the District of Montana
Dana L. Christensen, Chief District Judge, Presiding

Submitted April 9, 2015**
Seattle, Washington

Before: FERNANDEZ, RAWLINSON, and CALLAHAN, Circuit Judges.

Kevin Scott Nessland appeals his conviction for receipt of visual depictions

in violation of 18 U.S.C. § 2252(a)(2).  We affirm.

(1) Nessland first asserts that his right under the Fourth Amendment to the

---

*This disposition is not appropriate for publication and is not precedent
except as provided by 9th Cir. R. 36-3.

**The panel unanimously finds this case suitable for decision without oral
argument.  Fed. R. App. P. 34(a)(2).

United States Constitution to be free from unreasonable searches and seizures was violated when certain of his external hard drives were examined pursuant to a duly issued search warrant. We disagree. The warrant was issued to search the drives for images and videos of neighbors that were improperly taken by him. It did not specify "'the precise manner'" of execution, but it was not required to do so. United States v. Grubbs, 547 U.S. 90, 98, 126 S. Ct. 1494, 1500–01, 164 L. Ed. 2d 195 (2006). The officers were searching for a particular type of photographic image and came across the images in question here, which were in plain view. See United States v. Wong, 334 F.3d 831, 838 (9th Cir. 2003). Thereupon, they stopped their search, and did not return to it until they obtained another warrant that covered the new type of images. See United States v. Giberson, 527 F.3d 882, 885, 889–90 (9th Cir. 2008). That approach did not violate Nessland's rights. Indeed, this case is much like United States v. Schesso, 730 F.3d 1040 (9th Cir. 2013). There, as here, no special protocol was required,[1] and the officers did follow the procedures set forth in the warrant application.[2] Moreover, as here,

---

[1]Id. at 1047.

[2]Id. at 1049.

2

there was no real risk of exposing other people's data,[3] and there was no sign of overreaching.[4] Finally, even if some added protections could have been used here, the officers were not required to seek out and use the least intrusive means. See City of Ontario v. Quon, 560 U.S. 746, 763, 130 S. Ct. 2619, 2632, 177 L. Ed. 2d 216 (2010); Quon v. Arch Wireless Operating Co., 554 F.3d 769, 772–73 (9th Cir. 2009); see also Giberson, 527 F.3d at 889–90. While we are well aware of the need for vigilance,[5] we are satisfied that Nessland's rights were not violated by the search.[6]

(2) Nessland then asserts that the evidence was insufficient to support the judgment against him. Again, we disagree. When all inferences are drawn in favor of the prosecution, a "rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); see also United States v. Nevils, 598 F.3d 1158, 1163–65 (9th Cir. 2010) (en banc). While the evidence was largely

---

[3]Id.

[4]Id.

[5]See United States v. Comprehensive Drug Testing, Inc., 621 F.3d 1162, 1177 (9th Cir. 2010) (en banc) (per curiam).

[6]Cf. id. at 1168–71. We pointed out that the officers had violated the warrant's protocol, had seized third party data, and had shown no signs of returning that data.

3

circumstantial, it was sufficient to prove the elements of the crime described in 18 U.S.C. § 2252(a)(2) beyond a reasonable doubt.  See United States v. Lynn, 636 F.3d 1127, 1135–36 (9th Cir. 2011); United States v. Romm, 455 F.3d 990, 1001–02 (9th Cir. 2006); United States v. Mohrbacher, 182 F.3d 1041, 1048–50 (9th Cir. 1999); see also United States v. Jackson, 72 F.3d 1370, 1381 (9th Cir. 1995).  The evidence was sufficient to support inferences that the materials had moved in interstate commerce, and that Nessland had knowingly taken possession of them.  Among other things: Nessland had downloaded materials onto the hard drives; the files and folders on the hard drives were labeled and structured in a unique system which was mirrored on Nessland's computer; and some of the prohibited depictions on those drives were located in those folders.  Moreover, Nessland's computer expertise greatly lessens any concern that the materials were organized and received onto the hard drives by accident or without his knowledge.

AFFIRMED.

4